UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KEON NATHANIEL CHAMBERS,

     Plaintiff,

v.                                  Case No. 3:21cv677-MCR-HTC

ASSITANT WARDEN SANTIAGO, et al.,

     Defendants.

_____/

## ORDER AND
## REPORT AND RECOMMENDATION

Plaintiff Keon Chambers, a prisoner proceeding *pro se*, has filed an amended civil rights complaint pursuant to 42 U.S.C. § 1983,[1] ECF Doc. 10, along with a "Memorandum of Law in Support", ECF Doc. 11. The matter was referred to the undersigned Magistrate Judge for preliminary screening pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon review, and for the reasons discussed below, the Court finds Plaintiff's amended complaint fails to state a claim against any of the seven (7) defendants.

---

[1] Although the First Amended Complaint was filed in July, Plaintiff did not pay his filing fee until October 13, 2021.

Case No.: 3:21cv677-MCR-HTC

Because Plaintiff has already amended his complaint once, the Plaintiff finds an additional opportunity to cure the deficiencies would be futile.  In fact, to ensure the Court has read Plaintiff's allegations liberally, the undersigned also considered allegations from the initial complaint and the memorandum, as necessary to fill in any missing information.[2]    Nonetheless, despite considering over 70 pages of information from Plaintiff, the undersigned finds no valid claim has been stated against the Defendants.    Thus, the undersigned recommends the case be DISMISSED *sua sponte*, without further leave to amend.

Also, along with Plaintiff's amended complaint, Plaintiff also filed a motion for temporary restraining order.  ECF Doc. 13.  That motion is DENIED because it is not based on any matters raised in the amended complaint.

## I.    THE FIRST AMENDED COMPLAINT

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Santa Rosa Correctional Institution ("SRCI"), sues the following seven (7) SRCI officers:  (1) Assistant Warden Santiago, (2) Lieutenant Neel, (3) Lieutenant Butler (4) Sergeant Manners, (5) Officer Bennefield, (6) Officer

---

[2] *See Little v. City of New York*, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("Because the plaintiff is proceeding *pro se*, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading.").

Mitchell, and (7) Officer Doe.[3]  ECF Doc. 10 at 2-4.  From what the Court can discern, the crux of Plaintiff's complaint is that (1) Plaintiff was placed on a 72-hour property restriction without justification; (2) Defendant Sergeant Manners "fabricated" a retaliatory disciplinary report ("DR") against him on August 24, 2020, and (3) the other Defendants conspired to cover up the "falsified" documents.  The following allegations are taken from Plaintiff's second amended complaint, but reorganized, when necessary to make sense of the facts.

On August 23, 2020, at "1:00a.m. – 2:30 a.m.," Sergeant Manners gestured and beat on "Plaintiff's cell window and cell door B2108L trying to provoke Plaintiff.[4]  ECF Doc. 10 at 8.  On August 24, 2020, Sergeant Manners beat on "Plaintiff's cell window and cell door from 1:00 a.m. – 3:00 a.m." and "at 3:15 a.m. Sgt. Manners called Lt. Butler to place Plaintiff on property restriction for misuse of state property, which Plaintiff never received a disciplinary report for," violating his due process rights.  *Id.* at 8-9.

---

[3] To the extent Plaintiff is seeking damages against these defendants in their official capacities, Plaintiff is barred from doing so.  *See Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016) ("A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity.").

[4] The Court also has not attempted to recite every allegation Plaintiff makes in the amended complaint because some allegations, such as that, at some unspecified time, Sergeant Manners "did unlawfully threaten to kill him, stating one way or another he will get Plaintiff [and] that he will kill Plaintiff on close management . . . or one of his officers", ECF Doc. 10 at 8, are wholly unrelated to the claims.

"Defendant Sgt. Manners . . . conspir[ed] with unknown officers to place Plaintiff on property restriction and strip status for 72 hours without anything, and without justification, by way taking Plaintiff mattress, sheets, pillow, and blanket, blues, towel and all stationary items." *Id.* at 6. The decision to place Plaintiff on property restriction was "done out of retaliation violating [his] rights protected to freedom of speech." *Id.* at 9.

When Lieutenant Butler arrived, Plaintiff asked if he "could go on state property restriction." *Id.* Lieutenant Butler responded, stating "let me run it by Sgt. Manners, who stated 'I want all his property or run the gas.'" *Id.* After Lieutenant Butler "stated that he would make sure nothing happens to Plaintiff's property, he complied." *Id.* at 9. Sometime later, Plaintiff's cell was searched by Sergeant Manners and Officer Doe. *Id.* However, Sergeant Manners "never informed Lt. Butler on camera as to what he had allegedly found" in Plaintiff's cell. *Id.* "The mere fact Sgt. Manners was in [his] cell alone" shows he "planted the weapon then had some unknown John doe Officer help him search Plaintiff's cell." *Id.*

"Defendant Sgt. Manners falsified official documents stating inside his statement of facts (DR) . . . possession of weapon . . . on 8/24/2020" and the "team officials fail[ed] to consider the procedural violation . . . which required that two officers be present at all time upon searching an inmate cell to witness the conduct of the search." *Id.* "[T]he [DR's] statement of facts failure to mention any other

officer present while Sgt. Manners searched cell B2108L . . . was written due to retaliation by Sgt. Manners [and] this is why he knowingly violated . . . policy and procedure which render the Plaintiff to not be able to call second officer as a witness who supposedly been mention in the statement of facts." *Id.* "Sgt. Manners actions taken inside his statement of facts violated Plaintiff's due process under the color of state law." *Id.* at 6-7.

Also, "[t]he DR hearing officers violated Chapter 90 evidence Code F.S. which require no inmate shall be found guilty based off one officer statement alone. The basis of [the DR] decision states based in part upon written statement of Sgt. Manners and the completed investigation of Plaintiff." *Id.* at 7. Sergeant Manners also failed "to provide a DC6-220 for personal property that's withheld, . . . stored, or impound[ed] per FAC policy governing operation of DR." *Id.* This, however, "has not been stated in the statement of facts nor the finding of [the] DR" which "warrants grounds for dismissal of [the] DR for due process violation." *Id.*

Defendants Bennefield, Mitchell, Santiago, and Neel "fail[ed] to correct the" DR and, thus, "conspire[ed] to aid Sgt. Manners in falsifying official documents because Sgt. Manners . . . failed to list other officers involvement and failed to list their names and actions taken." *Id.* at 8. "Sgt. Manners was out side (sic) of his job requirements as to falsifying official documents and the wing fixing camera for B-dorm wing 2 will contradict the statement of facts in the said disciplinary report and

the (DR) team guilty findings." *Id.* at 9. Plaintiff's "guilty findings [were] based on fabricated testimony as evidence to keep Plaintiff on [close management]" based on retaliation in violation of Plaintiff's protected rights." *Id.*

Finally, Lieutenant Neel's "actions in conspiring to help cover up the falsifying of official documents, the fabricated DR, [was] based on retaliation for being a writ writer," *Id.* at 8, and "Lt. Butler's action in authorizing the falsified" DR "was done due to retaliation for grievance redress, seeking mental health treatment against Sgt. Manners and psych. counselor." *Id.* at 12.

Based on these events Plaintiff claims Defendants violated his First, Fifth[5], Eighth, and Fourteenth amendment rights. As relief, Plaintiff seeks (1) "monetary damages" against each defendant ranging from $690,000 to $890,000, (2) trial demand by jury, (3) "immediate release from close management"[6] and (4) "all defendants pay all court costs and all fees for medical and attorney fees." *Id.* at 10.

## II.    LEGAL STANDARD

Under the Prison Litigation Reform Act ("PLRA"), when a prisoner seeks relief against a governmental employee, the Court has an obligation to review the

---

[5] The "Fifth Amendment . . . applies to only federal, not state actors." *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 882 (11th Cir. 2016). Thus, because Plaintiff seeks relief against all state actors, the Court does not address Plaintiff's Fifth amendment claims below. Plaintiff should also omit any Fifth Amendment claims from his second amended complaint.

[6] Based on the documents attached to Plaintiff's initial complaint, Plaintiff was already on close management prior to the subject DR. Thus, Plaintiff would not be entitled to a release from close management, even if he were successful in this suit.

complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(a).  Dismissals under the PLRA for failure to state a claim are generally governed by the same standard as dismissals under the Federal Rules of Civil Procedure.  In screening the complaint, the Court reads Plaintiff's *pro se* allegations in a liberal fashion.  *See Haines v. Kerner*, 404 U.S. 519 (1972).

## III.   DISCUSSION

Plaintiff's amended complaint fails to state a claim under the Fourteenth Amendment, Eighth Amendment, First Amendment, or for conspiracy.  Namely, Plaintiff's placement on property restriction for 72 hours does not rise to the level of a deprivation of a liberty interest sufficient to state a claim under the Fourteenth Amendment.  Likewise, those facts simply do not support an Eighth Amendment conditions of confinement claim.  Finally, Plaintiff's allegations of retaliation and conspiracy are based solely on conclusory allegations without a single factual support and the conspiracy claim is barred by the intracorporate doctrine.

### A. Fourteenth Amendment Due Process Claim

The Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property without due process of law."  U.S. Const.

amend. XIV, § 1.  To state a claim for a violation of procedural due process, a prisoner must show there was (1) a deprivation of a constitutionally protected property or liberty interest; (2) state action; and (3) constitutionally inadequate process.  *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court identified two situations in which a prisoner - already deprived of liberty in the traditional sense - can be further deprived of liberty such that procedural due process protections are required.  *Id.* at 483-84.  "For an inmate to state a claim that prison officials have deprived him of a liberty interest in violation of due process, he must establish either that the 'deprivation of [a] benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"' or that 'a change in [his] conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.'"  *Fuller v. Gates*, 656 F. App'x 944, 946 (11th Cir. 2016) (quoting *Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999)).  Unless Plaintiff has been deprived a liberty interest, then no due process protection is triggered.  *See Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976) (noting generally that prison transfers and changes in classification status do not require due process protections).

As stated above, Plaintiff complains about being placed on property restriction strip status for "72 hours without anything, and without justification, by way of

taking of his mattress, sheets, pillow, and blanket, blues, towel, and all stationary items." This allegation, however, simply does not rise to an "atypical or significant hardship" in relation to the ordinary incidents of prison live. First, "[a] relatively short term of segregation will rarely give rise to a prisoner's liberty interest in the absence of exceptionally harsh conditions." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013).

Second, "[t]o the extent Plaintiff is raising a due process claim because he was immediately confined in a type of management confinement (property restriction or strip) after the rule infraction (disobeying a verbal order), the alleged actions of the Defendants did not impose an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life." *See Woodson v. Whitehead,* 2016 WL 9226437, at *4 (M.D. Fla. May 4, 2016), *aff'd,* 673 F. App'x 931, 933 (11th Cir. 2016) (affirming dismissal of Fourteenth amendment claim as frivolous); *see also, Sealey v. Giltner*, 197 F.3d 578 (2d Cir. 1999) (holding 101-day confinement in special housing unit did not impair a protected liberty interest); *Sandin*, 515 U.S. at 484 (prisoner's 30-day disciplinary segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *Wilson v. Blankenship*, 163 F.3d 1284, 1295 n.17 (11th Cir. 1998) (finding the due process clause does not create a liberty interest in being confined in general population rather than administrative segregation).

Because the property restriction did not deprive Plaintiff of a liberty interest, he was not entitled to any form of due process prior to being placed in such restriction. *O'Connor v. Carnahan,* No. 3:09CV224/WS/EMT, 2012 WL 2201522, at *10 (N.D. Fla. Mar. 27, 2012), *report and recommendation adopted,* No. 3:09CV224-WS, 2012 WL 2317546 (N.D. Fla. June 15, 2012) ("Absent such a protected liberty interest, Plaintiff's assertions that he received no notice or hearing of his placement on heightened security status and was maintained on such status for several months without review fail to state a Fourteenth Amendment due process claim.").

Plaintiff also raises due process concerns arising from an August 24, 2020 DR for possession of a weapon. Plaintiff complains his due process rights were violated because he was found guilty based solely on Sgt. Manners' statement and the search of his cell violated FDOC procedures. Plaintiff alleges he sought to have the DR dismissed and removed based on these procedural violations but Defendants Bennefield, Mitchell, Butler, Neel and Santiago failed to cure the violations.

Although Plaintiff does not state what punishment he received for that DR, it appears from a copy of the DR Plaintiff attached to Plaintiff's initial complaint, that the DR resulted in the loss of two (2) days of good time credit. If the Court were to find in Plaintiff's favor on this claim, it would be invalidating the DR and the

deprivation of good time credit. Thus, as an initial matter, Plaintiff's due process claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny.

In *Heck*, the Supreme Court held that a prisoner could not obtain monetary damages in a § 1983 action if "success would necessarily imply" that the prisoner's conviction was invalid. *Id.* at 486-87. The Supreme Court has applied *Heck* to prisoners' claims challenging prison disciplinary actions, even when the prisoner does not explicitly seek reinstatement of lost good-time credits. *See Edwards v. Balisok,* 520 U.S. 641, 646 (1997) (concluding that a claim for monetary damages resulting from defects in a prison disciplinary hearing which results in the loss of gain time credits is not cognizable under § 1983 until the disciplinary report is successfully overturned through habeas). The only way Plaintiff could bring this claim is if the DR at issue had been overturned – which he does not allege.[7]

Regardless, even assuming for purposes of this Report and Recommendation that the DR for possession of a weapon has been overturned, Plaintiff would still be unable to state a claim under the Fourteenth Amendment. While "[t]he deprivation of good time is unquestionably a matter of considerable importance" for which an

---

[7] In Plaintiff's initial complaint, he attaches two DRs for August 24, 2020. One was for disobeying verbal orders (refusing to exit his cell and go into property restriction) and the other is the DR for possession of a weapon. In Plaintiff's memorandum, he states one of the DRs was overturned, but does not indicate which one. The Court presumes the overturned DR is not the one subject to this complaint.

inmate is entitled to due process - that process was provided to Plaintiff. *Wolff v. McDonnell*, 418 U.S. 539, 561 (1974).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). Nevertheless, a disciplinary proceeding, whose outcome will "impose[ ] atypical and significant hardship on the inmate" must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense. *Id.* at 563–67.

"[T]he purpose of the advanced notice requirement is 'to afford the prisoner an opportunity to challenge the contemplated action and to understand the nature of what is happening to him.'" *Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999) (quoting *Vitek v. Jones,* 445 U.S. 480, 496 (1980)). Thus, due process is satisfied "when prisoners are informed of the conduct that established a violation—it is these factual allegations that put the prisoner on notice of the relevant evidence necessary to aid in their defense." *Evans v. Warden, FCC Coleman - Low*, 2018 WL 6579046, at *3 (M.D. Fla. Oct. 11, 2018), *report and recommendation adopted*, 2018 WL 6075493 (M.D. Fla. Nov. 21, 2018).

Plaintiff does not allege a violation of the *Wolff* factors.  Instead, he alleges the DR failed to comply with the FDOC procedural requirements.  A violation of an FDOC procedure, however, even if true, does not rise to the level of a constitutional violation.  *See Sandin*, 515 U.S. at 481–82 (prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons).  Moreover, it would be futile to allow Plaintiff to amend the complaint to allege violations of the *Wolff* factors because the DR, which was attached to Plaintiff's initial complaint, shows the *Wolff* requirements were met.  The report shows Plaintiff refused to appear and declined staff assistance.  The DR also shows Plaintiff was given advance notice, advised of the evidence that was considered, and told the reasons for disciplinary action.  *See Asad v. Crosby*, 158 F. App'x. 166, 173 (11th Cir. 2005) (finding DR confirmed *Wolff* procedural requirements were met). ECF Doc. 1 at 37-38.

Because Plaintiff was provided the due process to which he was entitled, it is irrelevant to the Fourteenth Amendment analysis whether Sgt. Manners fabricated the DR.  *See id.* ("We also reject Asad's challenge to the district court's analysis of his due process claim, in which he asserted, *inter alia,* that the defendants wrote false disciplinary reports as part of a conspiracy to retaliate against him.").

## B. Eighth Amendment Claim

Additionally, Plaintiff's placement on property restriction did not violate the Eighth Amendment. The Eighth Amendment requires that, at the minimum, all claims challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571–72 (11th Cir.1985). Furthermore, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

To establish an Eighth Amendment claim for deliberate indifference, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). Under the first requirement, known as the "objective component," a prisoner must prove that the condition of which he complains is sufficiently serious to violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The challenged condition must be "extreme." *Id.* at 9. While an inmate "need not await a tragic event" before seeking relief, *Helling*

*v. McKinney*, 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Id*. at 35.

The second requirement is known as the "subjective component," pursuant to which the prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. *Hudson,* 503 U.S. at 8 (quotation marks and citation omitted). Under the deliberate indifference standard, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff's allegations fail to satisfy either element. Indeed, in *Woodson v. Whitehead*, the Eleventh Circuit rejected a similar argument, finding that the prisoner's "complaint fails to allege facts to satisfy either the objective 'substantial risk of serious harm' component or the subjective 'deliberate indifference' component for showing an Eighth Amendment violation." *Id.* at 932. Specifically, the court stated as follows:

> Confinement without clothing (other than boxers), bedding, or hygienic materials for 72 hours during the months of April and August in Florida is not

the type of extreme prison conditions that create a substantial risk of serious harm.  Additionally, the fact that Warden Palmer saw the conditions in which Woodson was held during his disciplinary confinement is not enough to show that any of the defendants believed Woodson's health or safety to be at risk. Woodson failed to show that any of the defendants had subjective knowledge of a substantial risk of serious harm to Woodson."  *Id.* at 1289–90.

Plaintiff's allegations here are similar to those made by Woodson and the Eleventh Circuit found no error in the district court's dismissal of Woodson's Eighth Amendment claim as frivolous.

### C. First Amendment Retaliation Claim

At numerous places in the amended complaint, Plaintiff alleges Defendants retaliated against him.  As stated above, Plaintiff alleges (1) Sergeant Manners wrote the false DR, stating Plaintiff had a weapon, due to retaliation, (2) Sergeant Manners placed Plaintiff on property restriction "done out of retaliation violating [his] rights protected to freedom of speech"; (3) Lieutenant Neel conspired "to help cover up the falsifying of official documents . . . based on retaliation for being a writ writer; and (4) Lieutenant Butler "in authorizing the falsified" DR "was done due to retaliation for grievance redress."  *See* ECF Doc. 10.

"The First Amendment forbids prison official from retaliating against prisoners for exercising the right of free speech."  *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  To prevail on a First Amendment retaliation claim, a plaintiff must establish:  "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct

would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). "[T]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Farrow*, 320 F.3d 1235 at 1248.

This Circuit has made clear that "if a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report." *O'Bryant v. Finch*, 637 F. 3d 1207, 1215 (11th Cir. 2011). Thus, Plaintiff's retaliation against Sergeant Manners for filing the DR fails because Plaintiff was provided due process under *Wolff* and he was found guilty.

Plaintiff's other retaliation claims also fail as they are purely conclusory and devoid of any supporting facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *FuQua v. Massey*, 615 F. App'x 611, 613 (11th Cir. 2015) (noting that plaintiff's "conclusory allegations that her civil rights were violated by the defendants are insufficient to survive a motion to dismiss"). For example, Plaintiff does not identify the grievances or writs he filed or when they were filed. He does not state how Butler, Neel, or Manners learned of the grievances. Regardless, based

on the grievances Plaintiff attached to his initial complaint, it appears that he wrote seven (7) grievances *after* the DR.  Thus, Plaintiff was not deterred from exercising his first amendment right.  *See Mitchell v. Thompson*, 564 F. App'x 452, 457 (11th Cir. 2014) (reasoning that the plaintiff "continued to file grievances against [the defendant], even after [the alleged retaliation], which illustrates that a person of ordinary firmness would likely not be deterred from engaging in such speech"); *Moss v. Gradia*, 2010 WL 337603 (N.D. Fla. Jan. 21, 2010) (finding no adverse effect from alleged retaliation where the plaintiff filed six (6) grievances against the defendant after the alleged retaliation).

## D. Conspiracy

Finally, Plaintiff alleges Defendants "conspire[ed] to . . . falsif[y] official documents because Sgt. Manners [did not] list other officers involvement" in the DR.  ECF Doc. 10 at 8.  This claim, however, fails as a matter of law because of the intracorporate conspiracy doctrine.

Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation.  The doctrine stems from basic agency principles that "attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor."  *Dickerson v. Alachua Cty. Comm'n,* 200 F.3d 761, 767 (11th Cir. 2000), *citing Dussouy v. Gulf Coast Inv.*

*Corp.,* 660 F.2d 594, 603 (5th Cir. Nov.1981). "[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc); *accord Denney v. City of Albany,* 247 F.3d 1172, 1190–91 (11th Cir. 2001) (stating "the only two conspirators identified ... are both City employees; no outsiders are alleged to be involved" and concluding intracorporate conspiracy doctrine barred plaintiffs' § 1985(3) conspiracy claims for deprivation of their equal protection rights).

The reasoning behind the doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself. *See Dussouy,* 660 F.2d at 603 (explaining that "the multiplicity of actors necessary to conspiracy" is negated when the agents' acts are attributed to the corporation and the corporation and its agents are viewed as a single legal actor). This doctrine has been applied to private corporations and public, government entities. *See Chambliss v. Foote,* 562 F.2d 1015 (5th Cir. 1977), *aff'g,* 421 F.Supp. 12, 15 (E.D.La.1976) (applying the intracorporate conspiracy doctrine to bar a § 1985(3) claim against a public university and its officials); *see also Wright v. Illinois Dept. of Children & Family Servs.,* 40 F.3d 1492, 1508 (7th Cir. 1994) (holding that the intracorporate conspiracy doctrine applies not just to private entities but also to government

agencies such as the Department of Children and Family Services); *Runs After v. United States,* 766 F.2d 347, 354 (8th Cir. 1985) ("The Tribal Council as an entity or governmental body cannot conspire with itself.").

All the Defendants are officers of the FDOC. There are no outsiders involved. Plaintiff alleges the Defendants conspired with each other to allow Plaintiff to be found guilty of a DR that was fabricated by Sgt. Manners. The writing of the DR and the investigation conducted by Defendants all fall within the Defendants' duties or scope of authority. Although Plaintiff alleges Sgt. Manners went outside of his job by fabricating the DR, "the question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally. The scope-of-employment inquiry is whether the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business." *Grider v. City of Auburn, Ala.,* 618 F.3d 1240, 1261 (11th Cir. 2010) (finding "prosecution of Plaintiff Patrick Grider by making a false bribery charge—involves job-related functions well within Defendants' scope of employment as police officers"). Thus, Plaintiff's conspiracy claim is barred by the intracorporate conspiracy doctrine. *Id.*

Moreover, the conspiracy claim has no legs because Plaintiff has failed to show that his constitutional rights were violated. *See NAACP v. Hunt,* 891 F.2d

1555, 1563 (11th Cir. 1990) (explaining that a plaintiff alleging a § 1983 conspiracy must show an "actionable wrong," and concluding that, because the plaintiff's underlying malicious prosecution claim failed, its conspiracy claim also failed). Plaintiff's "[v]ague and conclusory allegations suggesting a § 1983 conspiracy are insufficient" to state a claim. *Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005) (citing *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir. 1984)).

## IV.  CONCLUSION

Plaintiff cannot assert any set of facts that would state a claim in this case. Also, Plaintiff has already submitted over 70 pages to try to support a cause of action. Thus, the undersigned recommends that dismissal, rather than another chance to amend, is appropriate as an amendment would be futile. *Rance v. Winn*, 287 F. App'x 840, 841 (11th Cir. 2008) ("district courts need not permit amendment where it would be futile to do so").  Moreover, a *sua sponte* dismissal is appropriate because this Report and Recommendation constitutes fair notice to Plaintiff that his suit should be dismissed and gives Plaintiff the opportunity to object. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *see also Glover v. Williams*, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

Accordingly, it is ORDERED:

1.    Plaintiff's motion for temporary restraining order (ECF Doc. 13) is DENIED as it is not based on any of the allegations in the first amended complaint. To the extent Plaintiff feels his constitutional rights have been violated based on the incidences described in the motion, Plaintiff shall file a separate complaint and pay a separate filing fee.

It is also respectfully RECOMMENDED:

1.    That Plaintiff's claims be DISMISSED without prejudice under 28 U.S.C. §§ 1915A(b)(1) and1915(e)(2)(B)(ii) for Plaintiff's failure to state a claim on which relief may be granted.

2.    That the clerk enter judgment accordingly and close this case.

DONE AND ORDERED this 9th day of November, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.